UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:20-CV-00077-EBA

REBECCA LYNN PRUITT,                                                                                       PLAINTIFF,

V.                       **MEMORANDUM OPINION AND ORDER**

ANDREW SAUL,
Commissioner of Social Security,                                                                          DEFENDANT.

**INTRODUCTION**

Rebecca Lynn Pruitt filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) on November 3, 2016, alleging that she became disabled on August 1, 2014. [R.17-1 at pg. 230]. Both applications were denied initially and upon reconsideration. [R. 1 at pg. 2]. Her case then came before an Administrative Law Judge ("ALJ"), who conducted a video hearing on January 3, 2019. [R. 17-1 at pg. 35]. On March 6, 2019, the ALJ found that Pruitt was not disabled under section 1614(a)(3)(A) of the Social Security Act. [*Id.* at pg. 24–29]. In evaluating the evidence of Pruitt's applications, the ALJ used the five-step sequential process provided by 20 C.F.R. § 416.971 *et seq*. [*Id.* at 20]. At step one, the ALJ determined that Pruitt had not engaged in substantial gainful activity since the onset of her disability. [*Id.* at 22]. At step two, the ALJ found that Pruitt had the following medically determinable severe impairments: depressive disorder, status-post ACL reconstruction surgery of the left knee; obesity; non-insulin dependent diabetes; anxiety; migraines; and degenerative disc disease of the lumbar spine with radiculopathy. [*Id.*]. At step three, the ALJ found that Pruitt did not have an impairment or combination of impairments that meets or medically equals the severity

of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 5.[1] [*Id.*]. At step four, the ALJ determined that Pruitt had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). [*Id.* at pg. 24]. Finally, at step five, the ALJ found that Pruitt was unable to perform past relevant work; however, because of her residual capacity to perform light work, there are jobs in the national economy which Pruitt can perform despite her severe impairments. [*Id.* at pg. 27–28]. In sum, the ALJ determined Pruitt was not disabled.

Pruitt maintains two arguments on appeal to the District Court: (1) the ALJ erred by giving only partial weight to Pruitt's treating psychologist, Dr. Jay Narola; and (2) the ALJ erred by discounting Pruitt's credibility and, as a result, failing to consider limitations as to her residual functional capacity. [R. 21-1 at pg. 1]. She argues that, but for these errors, the ALJ would have made a benefit determination in her favor. [*Id.* at pg. 11–12]. Pruitt has moved for summary judgment on the pleadings, asking that the ALJ's opinion be reversed, and her case be remanded for lack of substantial evidence. [R. 21-1]. The Commissioner also moves for summary judgment, contending that the ALJ did not commit reversible error and asserts that the ALJ's decision is supported by substantial evidence.

For the reasons that follow, this Court finds that the ALJ's determination was supported by substantial evidence, and thus will deny Plaintiff's motion for summary judgment and grant the Commissioner's motion for summary judgment.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), this Court may review the record for the limited purpose of inquiring into whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v.*

---

[1] This includes those impairments listed at 20 C.F.R. §§ 404.1520(d), 404.1525–1526, 416.920(d), 416.925, and 416.909).

*Perales*, 402 U.S. 389, 390, 401 (1971).  Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)); *Sias v. Secretary*, 861 F.2d 475 (6th Cir. 1988).  In conducting its review, a court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  Similarly, an administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion.  *See Ulman*, 693 F.3d at 714.  Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

## ANALYSIS

### I.

Pruitt's first argument is that the ALJ erred by discounting the medical opinion of Dr. Jay Narola, her treating psychiatrist.  Dr. Narola began treating Pruitt in 2014.  [R. 17-1 at pg. 48]. The Administrative Record indicates that Pruitt saw Dr. Narola at least through 2018, two years after applying for DIB and SSI.  The administrative record reveals that Dr. Narola treated Pruitt for various psychiatric conditions, including major depressive disorder, moderate chronic panic disorder, obsessive compulsive disorder, and severe hoarding tendencies.  The doctor-patient relationship between Pruitt and Dr. Narola is primarily evidenced by progress notes from 2014 to 2018.  [R. 17-1 at pg. 373–83, 586–670].  Throughout the progress notes, Dr. Narola documented Pruitt's mood, affect, judgment, and depressive behavior.  [*Id.*]

In a medical assessment report (hereinafter, "Medical Assessment Form"), Dr. Narola rated Pruitt's ability to do work related activities on a day-to-day basis in a regular work setting based on her psychological limitations.  [R.17-1 at pg. 511–513].  The ratings on the form mirror the

Social Security regulations, which adjudges a claimant's mental functioning on a five-point scale from "no limitation" to "extreme limitation." 20 C.F.R. Prt. 4, Subpt. P, App'x 1. The regulations define each rating as follows:

> No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>
> Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.[2]
>
> Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
>
> Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

*Id.* at § 12.00(F)(2)(a)–(e). For depressive, bipolar, and other related disorders, the ALJ need only identify one extreme limitation or two marked limitations among several areas of mental functioning, including the claimant's ability to: (1) "[u]nderstand, remember, or apply information[,]" "[i]nteract with others," "[c]oncentrate, persist, or maintain pace," "[a]dapt or manage oneself." *Id.* at § 12.04(b)(1).

By completing the Medical Assessment Form, Dr. Narola assessed Pruitt's mental and emotional capabilities affected by her impairments and how each limitation impacts her ability to perform work-related tasks. [R. 17-1 at pg. 511]. Under the section "Occupational Adjustments," Dr. Narola noted that Pruitt would need moderate adjustments for job tasks related to dealing with the public, using judgment, and interacting with her supervisor. [*Id.* at pg. 511]. He also noted that Pruitt would need marked adjustments for work tasks related to following work rules, relating to co-workers, dealing with work stresses, functioning independently, and maintaining attention or concentration. [*Id.*]. Under the section "Making Performance Adjustments," Dr. Narola

---

[2] On the Medical Assessment Form, a "mild limitation" is referred to as a "slight" limitation.

Page **4** of **16**

indicated that Pruitt would require moderate adjustments for understanding, remembering, and carrying out simple job instructions; marked adjustments for understanding, remembering, and carrying out detailed (non-complex) job instructions; and extreme adjustments for understanding, remembering, and carrying out complex job instructions. [*Id.*]. Finally, under the section "Making Personal-Social Adjustments," Dr. Narola indicated that Pruitt would require slight adjustments related to maintaining her personal appearance; moderate adjustments as to her ability to relate predictably in social situations; and marked adjustments related to behaving in an emotionally stable manner and being reliable in a work setting. [R. 17-1 at pg. 512]. The form also gave Dr. Narola the opportunity to elaborate upon Pruitt's impairments, where he stated:

> Patient used to work in jail which was very overwhelming and depressing to her. Now patient has improved but not significantly to take any stress of gainful employment. She is risk of psychiatric decompensation with any stressor. She still needs to continue active psychiatric treatment management.

[R. 17-1 at pg. 512].

After considering the record, including Dr. Narola's medical opinion, the ALJ determined that Pruitt had residual functional capacity to perform light work, with the following caveats:

> [C]an occasionally climb ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasionally balance on uneven surfaces; occasionally stoop; frequently kneel, crouch and crawl; avoid concentrated exposure to vibration, unprotected heights and moving machinery; can understand and perform simple and detailed instructions, but can only sustain attention for extended period of 2-hour segments for tolerances; can interact with supervisors and co-workers with occasional public contact, accepting instruction and responding appropriately to feedback from supervisors, and working in proximity to familiar others without being unduly distracted; can respond appropriately to occasional change in a routine work setting, and can avoid hazards.

[R. 17-1 at pg. 24].

When weighing whether Pruitt had the capacity to perform light work, the ALJ decided to only give partial weight to Dr. Narola's medical opinion, stating:

> The evidence of record supports Dr. Narola's moderate limitations but not the

>marked or extreme limitations, as the claimant made progress throughout her therapy sessions and did not require more invasive treatment such as hospitalization. Moreover, this checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. The undersigned finds this evidence has no probative value because it is not supported by any objective evidence.

[R. 17-1 at pg. 27].

As a threshold matter, the Commissioner does not contend that Dr. Narola is a non-treating physician.[3] As such, treating physicians are afforded great deference. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). "[I]f the opinion of the treating physician as to the nature and severity of a claimant's conditions is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record,' then it will be accorded controlling weight." *Id*. (quoting *Wilson v, Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). If an ALJ determines that the treating physician's opinion does not meet either prong under this test and decides not to give the treating physician's opinion controlling weight, then the ALJ "must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the specialization of the physician; and any other relevant factors." *Id.*

The regulations do not require an "exhaustive factor-by-factor analysis" of all these factors to be procedurally sufficient, so long as the ALJ's decision includes "good reasons" for giving the treating source's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 805 (6th Cir. 2011) (unpublished) (citing *Wilson*, 378 F.3d at 547). Thus, the ALJ's decision should contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make

---

[3] Although the Commissioner does not explicitly concede the issue, the bulk of the Motion for Summary Judgment [R. 23] argues that the ALJ applied the appropriate weight to Dr. Narola's medical opinion in light of regulations governing treating physician evidence.

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996)). However, even if the ALJ's decision is supported by substantial evidence, reversal is required when an agency fails to follow its own procedural regulations, unless the failure to do so is harmless. *Wilson*, 378 F.3d at 544; *see also Francis*, 414 Fed. App'x at 804 ("If an ALJ's decision flouts these procedural rules, we affirm only if we find the error harmless.").

## A. "Good Reasons" Requirement to Discount Treating Physician's Opinion

Pruitt asserts that the ALJ did not provide "good reasons" for discounting the opinion of her treating psychologist, Dr. Narola. The ALJ accorded "partial weight" to Dr. Narola's opinion, determining that the record supports the opinion only as to his findings of moderate limitations but not of the marked or extreme limitations indicated on the Medical Assessment Form. [R. 17-1 at pg. 27]. This conclusion evidences that the ALJ considered the second prong of analysis, whether the treating physician's opinion is inconsistent with other substantial evidence in the case record. As to the first prong that an ALJ must consider when discounting the weight of a treating physician's opinion, the ALJ does not allege that Dr. Narola's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques. Thus, the ALJ was required to give "good reasons . . . supported by evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley*, 581 F.3d at 406–07 (internal quotations omitted).

The ALJ's decision offered three reasons for according Dr. Narola's opinion partial, rather than controlling, weight:

    (1) The "evidence of record" did not support Dr. Narola's opinions about Pruitt's marked or extreme limitations because she had made progress throughout treatment and did not require invasive treatment or hospitalization;

  (2) The "checklist-style form" appeared to have been completed to accommodate Pruitt, and therefore only includes conclusions about her functional limitations without any rationale; and
  (3) Dr. Narola's opinion does not have probative value because it is not supported by objective evidence.

[R. 17-1 at pg. 27].

The ALJ's first reason for giving Dr. Narola's opinion partial weight is insufficient because the reason does not identify substantial evidence that is purportedly inconsistent with Dr. Narola's opinions. *See e.g. Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (finding ALJ's reason insufficient because it did not identify substantial evidence that conflicted with the treating physician's opinion). To be sure, the above "reason" could substantiate an ALJ's decision to discount the opinion of a treating physician. However, the ALJ's reasoning is unclear as it does not allow this Court to assess whether the reason is, in fact, supported by substantial evidence.

For instance, the ALJ determined that Pruitt only had a mild limitation as to understanding, remembering, or applying information.[4] [R. 17-1 at pg. 23]. The ALJ determined that this limitation was mild solely because, at the hearing, she could discuss her medical treatment and answer questions posed to her during the hearing. [*Id.*]. This determination did not reference Dr. Narola's opinion as expressed through the Medical Assessment Form, wherein he stated that Pruitt had an extreme limitation as to understanding, remembering, and carrying out complex job instructions; a marked limitation as to understanding, remembering, and carrying out detailed, but not complex, job instructions; and a moderate limitation as to understanding, remembering, and

---

[4] The regulations define this area of mental functioning as "the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(1). Examples include, but are not limited to:
  Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make work-related decisions.
*Id.*

carrying out simple job instructions. [R. 17-1 at pg. 511]. Nor does the ALJ indicate that he assessed this limitation based on the treatment progress notes prepared by Dr. Narola. The record reflects that Dr. Narola assessed Pruitt's "insight and judgment" during each visit. These assessments ranged from "limited," [R. 17-1 at pg. 381]; "adequate to understand treatment recommendations," [*Id.* at pg. 373–75, 377, 382]; "fair," "limited to fair," or "fairer" [*Id.* at pg. 376, 378–80].

The ALJ's conduct here is analogous to *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-334, 2021 U.S. Dist. LEXIS 169744 (W.D. Mich. Sep. 8, 2021) where the district court reversed and remanded the matter to the ALJ because, in part, the ALJ failed to provide a good reason for giving the treating physician partial weight. *Id.* at *18–19. There, the district court determined that the ALJ erred when it "cherry-picked" evidence in the record to diminish a claimant's symptoms and find that the claimant's alleged impairments were inconsistent with the record. *Id.* at *15. Here, the ALJ in the case at bar does not give the reviewing Court the benefit of assessing how he weighed a significant amount of Dr. Narola's opinions because they are not discussed in any detail at all in the decision. The ALJ mentions that Pruitt "made progress" throughout her therapy sessions, which would have been evident, in part, through Dr. Narola's treatment notes. But, as *White* instructs, "simply mentioning evidence is insufficient to comply with the treating physician rule and good reasons requirement, as the ALJ must provide some explanation as to why cited evidence does not support the doctor's opinion." *Id.* at *18.

Indeed, the "fair" and even "limited" descriptions of Pruitt's "insight and judgment" conflict with the conclusions contained in the Medical Assessment Form, but the ALJ's failure to identify and discuss the conflicting parts of the record runs afoul of the treating physician rule. The procedural requirement for sufficient clarity and detail when giving reasons to discount a treating physician's opinion "ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Although the ALJ's determination is supported by substantial evidence in the record, the ALJ's first reason—that the evidence of record supports Dr. Narola's findings of moderate limitations but not marked or extreme limitations—is procedurally deficient as a "good reason" under the Social Security regulations.

The ALJ's second reason for giving Dr. Narola's opinion partial weight takes issue with Dr. Narola's Medical Assessment Form. The form itself is two pages and is predominantly a checklist, wherein Dr. Narola indicated whether Pruitt's limitations in various areas were nonexistent, slight (i.e. mild), moderate, marked, or extreme. "While checklist opinions are not *per se* unreliable in this context, it is not improper for an ALJ to take into consideration the format of a medical opinion, especially in light of other factors in the record that signal unreliability." *Kepke v. Comm'r of Soc. Sec.*, 636 Fed. App'x 625, 630 (6th Cir. 2016) (unpublished). For instance, the Sixth Circuit has found that an ALJ properly discounted a treating source's questionnaire because the source "failed to provide an explanation for his responses." *Id.* (citing *Price v. Comm'r of Soc. Sec. Admin.*, 342 Fed. App'x 172, 176 (6th Cir. 2009)). In *Ellars v. Comm'r of Soc. Sec.*, the Sixth Circuit found an ALJ appropriately applied little weight to a checklist-style form where the physician "provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence." 647 Fed. App'x 563, 567 (6th Cir. 2016). There, the physician even completed a "REMARKS" section of the evaluation form, but did not provide explanation and did not cite evidence. *Id.*. Similarly, here, the Medical Assessment Form contained no explanation for Dr. Narola's conclusions, even when given the opportunity to elaborate. Nor does the form refer to any objective evidence. The ALJ specifically determined that Dr. Narola's opinion indicated Pruitt's "functional limitations without any rationale." [R. 17-1 at pg. 27]. Moreover, the ALJ assessed Dr. Narola's opinion in light of the

record when he observed that Pruitt "made progress throughout her therapy sessions[.]" [R. 17-1 at pg. 27]. This second reason for discounting Dr. Narola's opinion is sufficient to be procedurally sound under 20 C.F.R. § 404.1527(c)(2).

The ALJ's third reason for giving Dr. Narola's opinion less than controlling weight is his determination that, because Dr. Narola's conclusions are not supported by objective evidence, they have no probative value. Pruitt argues that this reason should be "quickly dispelled" because Dr. Narola did give "a written explanation in his opinion and noted specific diagnoses for Pruitt." [R. 21-1 at pg. 8]. Indeed, Dr. Narola did briefly elaborate in writing on the Medical Assessment Form, but the statements made are perfunctory at best as they merely state that Pruitt's improvements would not allow her to take on the "stress of gainful employment" and that she is at risk of "psychiatric decompensation." [R. 17-1 at pg. 512] Dr. Narola does not substantiate these claims, or the assertions made via the "checklist" portion of the Medical Assessment Form, with explanation or objective evidence. Thus, the undersigned finds that the ALJ did not err and gave good reasons for discounting Dr. Narola's treating physician opinion.

**B. Weighing of 20 C.F.R. § 404.1527 Factors**

Next, Pruitt argues that, even if this Court finds that the ALJ provided a good reason for weighing Dr. Narola's opinion as less than controlling, the ALJ still committed harmful error by failing to weigh the 20 C.F.R. § 404.1527 factors when deciding how much weight to give Dr. Narola's opinion. [R. 21-1 at pg. 8–9].

Although the regulations do not require an "exhaustive factor-by-factor analysis" of all the factors enumerated at § 404.1527, *Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 805 (6th Cir. 2011) (unpublished) (citing *Wilson*, 378 F.3d at 547), "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that

gets the short end of the stick." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 552 (6th Cir. 2010) (unpublished) (holding ALJ committed reversible error when he discounted a treating source's assessment without weighing the factors provided in 20 C.F.R. §§ 404.1527 and 416.927). "[E]ven if substantial evidence supports the ALJ's weighing of each of the treating physician opinions, 'substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527([c])(2) as harmless error.'" *Wilson v. Comm'r of Soc. Sec.*, 783 Fed. App'x 489, 498 (6th Cir. 2019) (quoting *Blakey*, 581 F.3d at 410).

In *Sito v. Comm'r of Soc. Sec.*, 229 F.Supp. 3d 633 (N.D. Ohio 2017), the district court noted that a treating physician's opinions "are not themselves entirely consistent or clear," but the ALJ committed harmful error by not "fully analyz[ing] [the doctor-patient relationship] in accordance with the treating physician rubric." *Id.* at 647. There, the treating physician had treated the claimant "for a considerable period of time" and was able to provide "longitudinal records," but the ALJ did not run through any analysis of the nature of the physician and claimant's relationship pursuant to the factors enumerated in § 404.1527. *Id.* The weight of the physicians opinion had an acute impact on the ALJ's decision, where there was a lack of other evidence of the claimant's fibromyalgia. *Id.*

Here, the ALJ erred in not adequately analyzing the weight Dr. Narola's opinion should be accorded, but, unlike in *Sito*, the error was not harmful. The ALJ's decision barely addresses any of the factors under in § 404.1527. For instance, the ALJ did not evaluate the length of the treatment relationship and the frequency of examination of Pruitt by Dr. Narola. *See* 20 C.F.R. § 404.1527(c)(2)(i). The record shows that Dr. Narola had treated Pruitt from 2014 to 2018, on a weekly or biweekly basis. The ALJ also did not examine the nature and extent of the treatment relationship. *See id.* at § 404.1527(c)(2)(ii). The ALJ indirectly assessed whether Dr. Narola's opinions were supported by or consistent with the record, *id.* at § 404.1527(c)(3)–(4), by

perfunctorily stating that the record only supported some of the opinions espoused by Dr. Narola. Finally, the ALJ did not address the fact that Dr. Narola was a psychiatrist and therefore specialized in the medical issues subject to Pruitt's claims.

Procedurally, the ALJ's analysis of how much weight to give Dr. Narola's opinion is deficient. Generally, "the decision should not be affirmed unless it can be shown that any error was harmless." *Sharp v. Barnhart*, 152 Fed. App'x 503, 507 (6th Cir. 2005). Based on the ALJ's decision, Dr. Narola's opinion was accorded partial weight in no small part because the ALJ found the Medical Assessment Form conclusory and unsupported by objective evidence. The ALJ did not take issue with the treatment notes in the record; in fact, the decision appears to rely heavily on the treatment notes in forming its conclusions regarding the extent of Pruitt's mental illnesses. Thus, the ALJ's failure to address the regulatory factors would have predominantly affected the weight of the Medical Assessment Form, which was patently defective as it contained only conclusory opinions without sufficient rationale or explanation. Ideally, the ALJ should conform with the procedural rules so as to provide the claimant a clear understanding of the reasons for the ALJ's decision. In this instance, the ALJ's failure to do so was harmless error because the record does not indicate that Pruitt was substantially prejudiced, given that Dr. Narola's opinions as recorded in the treatment notes are consistent with the ALJ's decision. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 547. The ALJ's decision to accord the opinion partial weight clearly arose from the conclusory and unsupported opinions contained in the Medical Assessment Form. Therefore, we need not remand to the ALJ for further analysis of the factors under 20 C.F.R. § 404.1527.

## II.

Pruitt next argues that the ALJ erred when it found Pruitt was not credible. In essence, she asserts that, had the ALJ appropriately weighed Dr. Narola's medical opinion, then the ALJ would

have found Pruitt's testimony to be consistent with the record and, therefore, credible. [R. 21-1 at pg. 11–12]. "[W]hile an ALJ's credibility determinations must be supported by substantial evidence, [the Court] accord[s] them special deference." *Biestek v. Comm'r of Soc. Sec.*, 800 F.3d 778, 788 (6th Cir. 2017) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Such deference is appropriate "particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Nevertheless, the ALJ's explanation of his credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Walters*, 127 F.3d at 247. An administrative decision is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Even if the Court were to resolve the factual issues differently, the ALJ's decision must stand if supported by substantial evidence. *See Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).

In *Walters*, the Sixth Circuit held that an ALJ properly assessed the credibility of the claimant by assessing whether the claimant's self-reported impairments were supported by the record, including claimant's testimony regarding "household and social activities" such as running errands, going on two-mile walks, preparing his own meals, and driving three times a week. *Walters*, 127 F.3d at 532. Weighing factors such as these was appropriate, the court explained, because the ALJ found contradictions among the medical reports, the claimant's testimony, and other evidence. *See id.* at 531.

Here, the ALJ's credibility determination as to Pruitt is supported by substantial evidence and ample explanation. Specifically, the ALJ pointed to several parts of the record which demonstrated "the intensity, persistence and limiting effects of [Pruitt's] symptoms were not entirely consistent" with other evidence, including Dr. Narola's treatment notes. [R. 17-1 at pg.

25]. For example, the ALJ highlighted the following activities as being inconsistent with her purported medical impairments:

- In 2017, "claimant worked diligently on cleaning out multiple bags of items from her home." The ALJ determined "[t]his activity undermines the claimant's allegations because it shows that she is capable of performing an activity that requires some concentration and undoubtedly some movement of her back and legs."
- In 2018, "the claimant had been busy running errands for others, visiting family, and attending her daughter's graduation from high school[,]" which was indicative of "an active lifestyle" and that other impairments were "not as severe as alleged."
- Pain allegations were undermined by recent records that indicated claimant had been walking two (2) miles.

[R. 17-1 at pg. 25]. Taken together, the ALJ found that Pruitt "is capable of performing more work-related activities than she alleged," and accordingly discounted her credibility. [*Id.*]. The ALJ's decision to discount Pruitt's allegation was reasonable and well-supported by the record. Moreover, as Dr. Narola's opinion was properly accorded only partial weight, the ALJ did not fail to consider the entire record when comparing Pruitt's allegations to the other medical and non-medical evidence contained in the record, such as the Medical Assessment Form.

## CONCLUSION

In sum, the ALJ did not commit harmful error when it determined that Dr. Narola's opinion should not be given controlling weight and giving the opinion only partial weight. Further, the ALJ's decision finding that Pruitt's testimony was not fully credible is supported by substantial evidence. Thus,

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment [R. 21] is **DENIED**, the Defendant Commissioner's Motion for Summary Judgment [R. 23] is **GRANTED**. A separate Judgment will be entered affirming the final decision of the Commissioner.

Signed February 2, 2022.



**Signed By:**
*Edward B. Atkins* *EBA*
**United States Magistrate Judge**